UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VAUGHAN COMPANY, REALTORS,   Case No. 10-10759

      Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

      Plaintiff,

v.   Adv. No. 12-01110

ULTIMA HOMES, INC.,
KENNETH HIGHTOWER, as trustee of the
Ultima Homes, Inc. Defined Benefit Plan and
Trust, JOHN DOE, as trustee of the Ultima Homes,
Inc. Defined Benefit Plan and Trust,

      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Amend Complaint ("Motion to Amend") filed by Plaintiff Judith Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors (the "Trustee"). *See* Docket No. 46. Defendant Ultima Homes, Inc. ("Ultima") filed a response in opposition to the Motion to Amend. *See* Docket No. 54. The Trustee seeks to amend her complaint to recover certain transfers from Vaughan Company Realtors ("VCR") to Ultima in connection with Ultima's construction of Douglas Vaughan's personal residence. After consideration of the Motion to Amend, the response thereto, and being otherwise sufficiently informed, the Court finds that the Motion to Amend should be denied as futile.

LEGAL STANDARD FOR AMENDING A COMPLAINT

Fed.R.Civ.P. 15(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7015, provides liberal standards for amending a pleading before trial. *U.S. v. Escamillo,* 2006 WL 1401634, * 2 (10th Cir. 2006). "[B]efore a responsive pleading is filed, a party may amend a pleading at any time without leave of court, and after a responsive pleading is filed leave to amend 'shall be freely given when justice so requires.'" *Id.* (quoting Rule 15(a)). Courts may deny a request to amend "for reasons such as 'undue delay, bad faith …, repeated failure to cure deficiencies …, undue prejudice to the opposing party…, [and] futility of the amendment.'" *Cohen v. Longshore,* 621 F.3d 1311, 1313 (10th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

An amendment would be futile when the proposed new complaint fails to state a claim upon which relief could be granted. *Tenison v. Morgan,* 2013 WL 323227, *2 (10th Cir. 2013) (noting that an "amendment[] would be futile …[where] the complaint, even if amended as proposed, would still fail to state a claim"). *See also Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 185 (2d Cir. 2012) (same). Therefore, a court need not grant leave to amend if "the amendment would not cure the deficiency" under Fed.R.Civ.P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

In evaluating a motion to dismiss under Rule 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012, the Court accepts as true all well pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The

Court should look "to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). To withstand dismissal, the plaintiff must sufficiently allege all facts necessary to support the required elements under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

PROCEDUAL HISTORY AND ALLEGED FACTS[1]

For many years prior to 2010, Douglas Vaughan caused VCR to operate as a Ponzi scheme. Mr. Vaughan concealed the ongoing fraud until he eventually went to prison and the business shut down. In 2004 or 2005, Mr. Vaughan engaged Ultima to construct his personal residence. On May 5, 2005 and July 29, 2005, VCR issued and delivered checks to Ultima totaling $501,849.33 as payment for the project. Although the Defined Benefit Pension Plan and Trust (the "Ultima Plan") maintained by Ultima invested in VCR's promissory note program, Ultima itself did not.

Over four years later on February 22, 2010, VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Trustee was appointed in the Chapter 11 case on April 29, 2010 (the "Appointment Date"). After her appointment, the Trustee reconstructed VCR's books and records in order to investigate the fraudulent scheme. On February 14, 2012, the Trustee commenced an adversary proceeding against Ultima, the Ultima Plan, and the Ultima Plan's trustee to recover transfers made to those Defendants under the actual and constructive fraud provisions of 11 U.S.C. §§ 544 and 548 and applicable state law. *See* Complaint (Docket No. 1).

---

[1] For purposes of this opinion, the Court assumes without deciding that the facts alleged in the Proposed Amended Complaint are true. *See* Docket No. 46-1.

-3-

The original Complaint alleges that Ultima was named as a defendant in the action "to the extent the Ultima [Plan] is not a legally recognizable entity." *Id.* at 2. It also contains an allegation that Ultima "was … the builder of Vaughan's personal residence and received at least $501,849.33 in transfers from VCR in connection with the building of Vaughan's residence, without consideration from VCR." *Id.* The original Complaint does not contain any counts that specifically relate to Ultima and/or the construction of Mr. Vaughan's residence.

On May 17, 2013, the Trustee filed the Motion to Amend with the proposed First Amended Complaint (the "Amended Complaint") attached. *See* Docket No. 46. The Amended Complaint contains eighteen additional allegations relating to the transfers from VCR to Ultima in connection with Ultima's construction of Mr. Vaughan's residence. It also contains two additional counts (Counts 10 and 11) for actual and constructive fraud under state law, N.M.S.A. §§ 56-10-18(A)(1) and (2), based on alleged transfers to Ultima made within four years prior to the Petition Date.

The Internal Revenue Service ("IRS") filed a proof of claim in the bankruptcy case on March 26, 2013.[2] The IRS later filed an amended claim in the amount of $972,597.36, consisting of a $708,353.57 unsecured priority claim and a $264,243.79 unsecured non-priority claim. *See* Claim No. 200-4. Over 500 claims totaling approximately $69 million have been filed against the estate, of which more than $67 million are filed as unsecured non-priority claims. *See generally* Claims Register. The Trustee objected to the IRS claim. The claim objection is pending.

---

[2] A bankruptcy court has the inherent authority to take judicial notice of or otherwise consider entries on its own docket. *See In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In Quade,* -- B.R. --, 2013 WL 4033101, *1 (A "bankruptcy court [is authorized] … to take judicial notice of its own docket").

DISCUSSION

The Trustee seeks to amend the Complaint to add separate counts against Ultima for fraudulent transfer under state law. Ultima contends that such amendments would be futile because the transfers at issue are time barred under the applicable statutes of limitation. The Trustee offers a variety of reasons why the proposed amendments are not futile, each of which is addressed below.

*Whether the proposed amendments are futile*

A.     *The IRS' ten-year look back period*

The Trustee asserts that she is immune from the four-year statute of limitations that ordinarily applies to state law fraudulent transfer claims because Section 544(b) permits her to use the ten-year look back period available to the IRS.

Section 544(b) provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 544(b)[3] is most often used to recover transfers that would be voidable under state law. *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 543 n.7, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (describing Section 544(b) as applying to "transfers voidable under state law"); *Sender v. Simon,* 84 F.3d 1299, 1305 (10th Cir. 1996) (noting that a bankruptcy trustee's powers under Section 544(b) are usually predicated upon state law).[4] To the extent a trustee seeks to avoid

---

[3] Unless otherwise noted, all future references to "Section" or "§" are to the Bankruptcy Code, 11 U.S.C. § 101, et seq.
[4] *See also In re JTS Corp.,* 617 F.3d 1102, 1111 (9th Cir. 2010) ("Under § 544(b) and § 550(a) of the Bankruptcy Code, a trustee may avoid a fraudulent transfer of property if that transfer is voidable under *applicable state law*.") (emphasis added); *Baldi v. Samuel Son & Co., Ltd.* 548 F.3d 579, 581 (7th Cir. 2008) (Section "544(b) … allows a trustee in bankruptcy to avoid transfers made by the bankrupt that would be voidable under *state law* if made by an unsecured creditor.") (emphasis added).

-5-

such transfers, the claims are generally subject to state law limitations periods. *See In re Dry Wall Supply, Inc.,* 111 B.R. 933, 936 (D.Colo.1990) ("'[I]f the creditor ... is barred from recovery because of the running of a statute of limitations prior to the commencement of the case, the trustee is likewise rendered impotent.'") (quoting 4 Collier on Bankruptcy § 544.03[2] at 544-21 to 22 (L. King. 15th ed. 1989)).[5]

New Mexico's version of the Uniform Fraudulent Transfer Act ("UFTA"), in conjunction with Sections 108(a) and 544(b), allows a trustee to void fraudulent transfers that occurred within four years before commencement of the bankruptcy case. *See* N.M.S.A.1978 § 56-10-23 (establishing a four year statute of limitations on pursuing fraudulent transfer actions under New Mexico law); *In re Strom,* 2013 WL 265071, *3 n. 5 (Bankr.D.N.M. 2013) ("The New Mexico UFTA has a four-year 'look-back' period."). The transfers from VCR to Ultima occurred in 2005. The bankruptcy petition was filed more than four years later on February 22, 2010. Thus, the Trustee's state law fraudulent transfer claims against Ultima would typically be barred and the proposed amendments would be futile.

The Trustee does not dispute that the transfers to Ultima occurred more than four years before commencement of the bankruptcy case. Nevertheless, she argues that Section 544(b) permits her to invoke the statute of limitations available to any unsecured creditor of the estate, including the IRS. Since Section 6502 of the Internal Revenue Code ("IRC") provides a ten-year statute of limitations for collection of taxes by the IRS, the Trustee contends that she is entitled to recover fraudulent transfers under the UFTA made within ten years before the Petition Date. *See* 26 U.S.C. § 6502.[6]

---

[5] *See also In re Simpson,* 334 B.R. 298, 304 (Bankr.D.Mass.2005) (noting that when a trustee is asserting claims under state law, state law dictates the statute of limitations applicable to the claim).

[6] The IRC provides that "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in

-6-

There is support for the Trustee's position. *See, e.g., In re Porras*, 312 B.R. 81, 97 (Bankr.W.D.Tex. 2004) (Under Section 544(b), a bankruptcy trustee pursuing a state law fraudulent transfer claim is subject to the ten-year look back period available to the IRS when it seeks to collect taxes, provided the IRS is an unsecured creditor of the estate.); *In re Republic Windows & Doors, LLC,* 2011 WL 5975256, * 9 (Bankr.N.D.Ill. 2011) (same); *In re Polichuk,* 2010 WL 4878789, *3 (Bankr.E.D.Pa. 2010) (same); *In re Greater Southeast Community Hosp. Corp. I*, 365 B.R. 293, 304 (Bankr.D.Dist.Col. 2006) (same); *In re Emergency Monitoring Technologies, Inc.,* 347 B.R. 17, 19 (Bankr.W.D.Pa. 2006) (same); *In re G-I Holdings, Inc.,* 313 B.R. 612, 635 (Bankr.D.N.J. 2004) (allowing a bankruptcy trustee to use the ten-year look back period available to a federal environmental agency).

In *Greater Southeast Community Hosp. Corp. I,* the court cogently explained the reasoning for its holding:

> The estate representative steps into the shoes of each such unsecured creditor and is cloaked with the rights of that creditor. If an unsecured creditor of the estate could have avoided a transaction under state law despite the existence of a state statute of limitations on that claim because the creditor was acting in a 'governmental capacity,' so too can the estate representative avoid the transfer under § 544(b). The unsecured creditor's ability to trump the applicable state statute of limitations might derive from its sovereign immunity, but the estate representative's ability to override that same limitation derives from § 544(b). The focus of the court in determining who is acting in a "governmental capacity" is the unsecured creditor, not the estate representative.

365 B.R. at 304. While this may be a reasonable interpretation of Section 544(b) if read in isolation, the Court is not persuaded that this logic yields the correct result.

It is true that, to the extent the IRS seeks to collect taxes using the UFTA, the action would not be governed by any state statute of limitations. *See U.S. v. Spence,* 2000 WL

---

court, but only if the levy is made or the proceeding begun ... within 10 years after the assessment of the tax...." 26 U.S.C. § 6502(a)(1). IRC Section 6501 specifies that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed...." 26 U.S.C. § 6501(a). The IRS therefore has three years from the filing of a tax return to assess the amount of taxes owed and another ten years from the date of assessment to pursue its claims.

-7-

1715216, *3 (10th Cir. 2000) (concluding that the IRS was not bound by the statute of limitations contained in the UFTA or its statutory predecessor).[7]  Instead, the IRS benefits from a ten-year limitations period under IRC Section 6502.  *Id.*  The doctrine that "the United States is not bound by state statutes of limitation … in enforcing its rights" is known as *nullum tempus occurrit regi*.  *U.S. v. Summerlin*, 310 U.S. 414, 416 (1940); *S.E.C. v. Rind,* 991 F.2d 1486, 1491 (9th Cir. 1993).  The doctrine originates in the ancient principle that "no time runs against the king" and "finds its modern justification in the policy that public rights, revenues, and property should not be forfeited due to the negligence of public officials."  *Rind,* 991 F.2d at 1491.

It is also true that the Trustee may stand in the shoes of any unsecured creditor to set aside transfers to third parties.  *See Zilkha v. Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir. 1990).  It does not necessarily follow, however, that a bankruptcy trustee standing in the shoes of the IRS is immunized from state statutes of limitation.

The application of *nullum tempus* is not without limits.  Immunity from state statutes of limitation is a sovereign power of the United States.  *See See Alaska Dept. of Environmental Conservation v. E.P.A.,* 540 U.S. 461, 514, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) ("[T]he United States are not bound by any statute of limitations … in a suit brought by them as a sovereign Government to enforce a public right, or to assert a public interest.") (internal citations omitted).  Such power may only be used to enforce public rights and protect public interests.  *See Bd. of County Comm'rs for Garfield County, Colo. v. W.H.I., Inc*., 992 F.2d 1061, 1065 (10th Cir.1993) ("[A] state's statute of limitations does not apply to an action brought by the federal government to vindicate public rights or public interests, absent a clear showing of

---

[7] *See also Greater Southeast Community Hosp. Corp. I,* 365 B.R. at 302 (collecting cases).

-8-

contrary congressional intent.").[8] Therefore, if an action brought in the name of the United States does not involve public rights or interests, state statutes of limitation typically apply. *See Marshall v. Intermountain Elec. Co., Inc.,* 614 F.2d 260, 263 n.3 (10th Cir. 1980) ("An action which, although brought in the name of the United States, involves no public rights or interests may be subject to a state statute of limitations."); *S.E.C. v. Calvo,* 378 F.3d 1211, 1218 (11th Cir. 2004) ("Where . . . the government's action vindicates a private interest, the [state statute of limitations] defense is typically available."). In such a case, "the federal government functions as a mere conduit for the enforcement of private rights which could have been enforced by the private parties themselves." *Marshall,* 614 F.2d at 262 n.3.

"In expounding a statute, [the Court] must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the whole law, and to its object and policy." *U.S. v. Lamirand,* 669 F.3d 1091, 1096 (10th Cir. 2012).[9] The Court does not believe that Congress, by enacting Section 544(b), intended to vest sovereign powers in a bankruptcy trustee and thereby immunize her from the strictures of state law in the pursuit of her private interests. If the federal government were to delegate the exercise of its sovereign powers in such circumstances, it would pervert the purpose of *nullum tempus*, which is to immunize the *federal government* from certain state laws. *See Alaska Dept. of Environmental Conservation*, 540 U.S. at 514 ("[T]he United States are not bound by any statute of limitations … in a suit brought by them as a *sovereign Government*.") (emphasis added); *cf City of Lincoln, Neb. V. Windstream Nebraska, Inc.,* 800 F.Supp.2d 1030, 1035 (D.Neb. 2011) ("The maxim *nullum tempus occurrit regi* … only applies in favor of the sovereign power, and has no application to municipal

---

[8] *See also In re Fort Totten Metrorail,* 895 F.Supp.2d 48, 59 (D.D.C. 2012) ("Under the doctrine of *nullum tempus*, sovereigns enjoy a common-law immunity from the operation of statutes of limitations and repose ... when they sue to vindicate public rights.") (internal quotations omitted).
[9] *See also In re HealthTrio, Inc.,* 653 F.3d 1154, 1161 (10th Cir. 2011) ("'It is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction.'").

-9-

corporations deriving their powers from the sovereign, although their powers, in a limited sense, are governmental.").[10]

Further, even if the Trustee were permitted to exercise the sovereign powers of the United States, her argument would still fail. As the Court previously explained, not even the sovereign is immune from state statutes of limitation when an action, although brought in the name of the United States, involves no public rights or interests. *See Marshall,* 614 F.2d at, 263; *Calvo,* 378 F.3d at 1218.[11] Here, the Trustee seeks to invoke the ten-year statute of limitations contained in IRC Section 6502 to pursue a private action for the benefit of VCR's creditors generally. Because the IRS is only permitted to use a ten-year look back period in order to perform a government function, the Trustee is likewise limited under Section 544(b). *See In re Brooke Corp.,* 485 B.R. 650, 665 (Bankr.D.Kan. 2013) (Section 544(b) "confers upon the trustee no greater rights of avoidance than a creditor would have had if it were asserting invalidity on its own behalf.") (citing 5 *Collier on Bankruptcy*, ¶ 544.06[3]).

This conclusion "give[s] practical effect to Congress's intent." *U.S. v. Heckenliable,* 446 F.3d 1048, 1051 (10th Cir. 2006). Section 544(b) is meant to incorporate state law, not to subordinate it. *See In re Truong,* 2008 WL 2640446, *2 (3rd Cir. 2008) ("Section 544(b)(1) is a vehicle in which a trustee may recover fraudulently transferred assets of the debtor's property under a state's fraudulent conveyance laws."); *In re Energy Smart, Inc.,* 381 B.R. 359, 381 (Bankr.M.D.Fla. 2007) ("Section 544 acts in tandem with state law."). The IRS holds an

---

[10] *See also Williams v. Infra Commerc Anstalt,* 131 F.Supp.2d 451, 457 (S.D.N.Y. 2001) ("[T]he doctrine of *nullum tempus* typically applies where the *government acts as a sovereign.*") (emphasis added).
[11] *Cf William v. Infra Commerc Anstalt,* 131 F.Supp.2d 451, 457-458 (S.D.N.Y. 2001) (Delaware Insurance Commissioner was bound by state statute of limitations where it commenced a fraudulent transfer action to enforce the private rights of the company's policyholders, shareholders, and creditors); *cf City of Wichita, Kan. V. U.S. Gypsum Co.,* 72 F.3d 1491, 1498 (10th Cir. 1996) (holding that the City of Wichita was bound by the state statute of limitations because the cause of action arose out of a proprietary, rather than governmental, function).

unsecured claim in a substantial portion of bankruptcy cases. If a bankruptcy trustee or debtor in possession could recover transfers made within ten years before the petition date, it would eviscerate the UFTA's four-year look back period in most bankruptcy cases. *See, e.g., In re Solomon,* 299 B.R. 626, 632 n. 21 (10th Cir. BAP 2003) (Section 544(b) and the UFTA "permit[] an avoidance action to be commenced within four years of the transfer.").[12] Based on the text of Section 544(b), the Court is unwilling to draw an inference that Congress intended such a dramatic change in the law.

B.     *The Trustee's remaining arguments regarding futility*

The Trustee offers several other reasons why the proposed amendments are not futile. First, she relies on N.M.S.A. 1978 § 56-10-23(A), which provides that to the extent a claim is asserted under Section 56-10-18(A)(1), such claim is extinguished unless brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." The Trustee's sole argument is that, until she was appointed, she necessarily could not discover the transfers. This argument is unavailing. As explained above, the Trustee stands in the shoes of an unsecured creditor under Section 544(b). Thus, the relevant inquiry is not when the Trustee reasonably could have discovered the transfers, but when an unsecured creditor of VCR could

---

[12] *See also Boyer v. Crown Stock Distribution, Inc.,* 587 F.3d 787, 791 (7th Cir. 2009) (Section 544 allows the trustee to recover transfers within the "four-year look back period of the Uniform Fraudulent Transfer Act"); *In re Moore,* 608 F.3d 253, 260 (5th Cir. 2010) ("[A] four-year limitations period applies to fraudulent transfer actions brought under Texas law [and Section 544]."); *In re International Administrative Services, Inc.,* 408 F.3d 689, 708 (11th Cir. 2005) (acknowledging that Florida's version of the UFTA generally provides for a four-year look back period); *In re Lydia Cladek, Inc.,* -- B.R. --, 2013 WL 3943279, *3 (Bankr.M.D.Fla. 2013) ("[T]he relevant reach back period [under the uniform act] begins on the petition date and encompasses all transfers within the four years prior."); *In re M & M Marketing, L.L.C.,* 2013 WL 3071005, *4 (Bankr.D.Neb. 2013) ("The advantage for the trustee [under Section 544], standing in the shoes of an unsecured claim holder, is a four-year look-back period."); *In re Wettach,* 489 B.R. 496, 509 (Bankr.W.D.Pa. 2013) ("[F]our years is the appropriate lookback period" for a state law fraudulent transfer action.); *In re Bricket,* 2012 WL 5177976, *2 (Bankr.S.D.Ind. 2012) (same); *In re Prebul Jeep, Inc.,* 2009 WL 4581900, *3 n.6 (Bankr.E.D.Tenn. 2009) (same).

have done so. The Trustee has not asserted that the transfers could not have been discovered by an unsecured creditor. Consequently, the Court need not reach that issue.

Next, the Trustee argues that the statute of limitations contained in the UFTA was tolled until the date of her appointment based on the theory of adverse domination. Under that theory, "as long as a corporation is controlled or 'dominated' by wrongdoers against whom a cause of action exists, the statute of limitations is tolled because the wrongdoers cannot be expected to bring an action against themselves." *Wing v. Dockstader,* 2012 WL 2020666, *3 (10th Cir. 2012). The Trustee contends that Douglas Vaughan could not be expected to induce VCR to bring a fraudulent transfer action based on his own misuse of corporate funds. That may be so. However, VCR could not have been expected to bring such an action. Before it commenced its Chapter 11 case, VCR - as transferor - had no standing to bring a fraudulent transfer claim under the UFTA to avoid its own transfers. Fraudulent transfer claims must be brought by an unsecured creditor of the transferor or by a trustee standing in his or her shoes. *See* N.M.S.A. 1978 § 56-10-21, titled "Remedies of creditors" (describing the relief a *creditor* may obtain under the UFTA); N.M.S.A. 1978 § 56-10-15(D) (defining creditor as "a person who has a claim");[13] *In re C.D. Jones & Co., Inc.,* 482 B.R. 449, 458 (Bankr.N.D.Fla. 2012) ("[C]reditors' fraudulent transfer claims belong to the Trustee under the strong-arm powers of Section 544 and

---

[13] *See also* N.M.S.A. 1978 § 56-10-18 (describing transfers that are fraudulent as to present and future *creditors*) (emphasis added); N.M.S.A. 1978 § 56-10-19 (describing transfers that are fraudulent as to present *creditors*) (emphasis added).

are property of the estate once the case is filed").[14] The UFTA's statute of limitations was therefore not tolled based on that theory.[15]

Finally, the Trustee contends that the proposed amendments are timely because they relate back to the date of the original complaint under Fed.R.Civ.P. 15(c), made applicable to adversary proceedings by Fed.R.Bankr.P. 7015. Relation back under Rule 15(c) can only save a claim from being time barred to the extent the claim would have been timely if asserted in the original pleading. *See Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 962 (10th Cir. 2012) ("Rule 15(c) saves an otherwise untimely amendment by deeming it to 'relate back' to the conduct alleged in the *timely original complaint.*") (emphasis added). Having determined that the four-year statute of limitations applies to the Trustee's new claims against Ultima and was not tolled, those claims would have been untimely if asserted in the original complaint. Relation back is therefore not applicable.

The Court concludes that the proposed amendments would be futile. The Court therefore need not reach the issue of whether the proposed amendments would cause undue prejudice to Ultima.

---

[14] *See also In re D.E. Frey Group, Inc.,* 387 B.R. 799, 806 (D.Colo. 2008) (Once a bankruptcy case is filed, "[c]laims arising under fraudulent and preferential transfers belong to the trustee or committee, not the debtor."). A debtor in possession has the rights and powers of a trustee to bring avoidance actions. 11 U.S.C. § 1107(a).

[15] Because the Court determined that the neither the discovery rule nor the adverse domination theory tolled the statute of limitations contained in the UFTA, it need reach the issue of whether the Trustee is entitled to any additional time under Section 546. *See* In re Pearlman, 460 B.R. 306, 315 (Bankr.M.D.Fla. 2011) (The trustee may only take advantage of Section 546(a) to the extent "the state statute of limitations has not expired as of the commencement of the bankruptcy case."); 4 Collier on Bankruptcy ¶ 546.02 [1][b] ("If the state law limitations period governing a fraudulent transfer action has not expired at the commencement of a bankruptcy case, the trustee may bring the action pursuant to section 544(b), provided that it is commenced within the section 546(a) limitations period.").

CONCLUSION

     Based on the foregoing, the Motion to Amend will be denied as futile. The Court will enter an order consistent with this Memorandum Opinion.

                                                          /s/ Robert H. Jacobvitz
                                           ROBERT H. JACOBVITZ
                                           United States Bankruptcy Judge

Date entered on docket: August 20, 2013

COPY TO:

James Askew, Edward Mazel, & Dan White
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

Paul Fish
P.O. Box 2168
Albuquerque, NM 87103-2168